JESSE K. COX (SBN 285218)
jcox@lynberg.com
TANNER E. PETCHUL (SBN 364352)
tpetchul@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite 1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendant CITY OF FONTANA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE**

DANNY MOLINA LIRA, an Individual,

Plaintiff,

vs.

CITY OF FONTANA, a California Municipality, and DOES 1-20,

Defendant.

CASE NO. 5:26-cv-01632 JGB (DTBx)

*Assigned to: Hon. Jesus G. Bernal*

**DECLARATION OF TANNER E. PETCHUL IN SUPPORT OF DEFENDANT MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

***[Filed concurrently with Defendant City of Fontana's Notice of Motion to Dismiss Plaintiff's Second Amended Complaint; and [Proposed] Order thereto]***

Date: January 4, 2027
Time: 9:00 a.m.
Dept.: 1

*Trial Date: None Set*

*Complaint Filed: March 30, 2026*

///

///

**DECLARATION OF TANNER E. PETCHUL**

I, TANNER E. PETCHUL, do state and declare as follows:

1. I am an attorney at law duly licensed to practice before this Court and am an associate with the law firm of Lynberg & Watkins, a Professional Corporation, attorneys of record for Defendant CITY OF FONTANA ("Defendant").

2. I have personal knowledge of the following facts and, if called as a witness, I could and would testify competently thereto. This Declaration is made in support of Defendant's Motion to Dismiss Plaintiff Danny Lira's Second Amended Complaint ("Motion"), presently noticed for hearing on January 4, 2027.

3. Attached hereto as **Exhibit "A"** is a true and correct copy of Plaintiff Danny Lira's Complaint (Dkt. 1)

4. Attached hereto as **Exhibit "B"** is a true and correct copy of Plaintiff Dany Lira's First Amended Complaint (Dkt. 17).

5. Attached hereto as **Exhibit "C"** is a true and correct copy of Plaintiff Danny Lira's Second Amended Complaint (Dkt. 24).

6. On June 16, 2026, Defense counsel sent Plaintiff's counsel detailed correspondence regarding deficiencies perceived in Plaintiff's Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief in his Complaint. The parties discussed the issues telephonically on June 23, 2-26, at which time Plaintiff's counsel indicated that they would cure the deficiencies for those Claims. Accordingly, the parties entered into a Joint Stipulation regarding Plaintiff filing a First Amended Complaint (Dkt. 15), which was approved by the Court (Dkt. 16). Consistent with the stipulation and order, Plaintiff filed the First Amended Complaint on July 24, 2026.

7. Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint on August 14, 2026 (Dkt. 18). The Court granted Defendant's Motion to Dismiss Plaintiff's First Amended Complaint on September 11, 2026, by way of

Court Order. Attached hereto as **Exhibit "D"** is a true and correct copy of the Court's September 11, 2026 Order Granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 22).

8. Pursuant to Local Rule 7-3, this Motion is filed following Defense counsel's meet and confer efforts that took place on October 1, 2026, and October 6, 2026. More specifically, Defense counsel contacted Plaintiff's counsel by way of detailed correspondence on October 1, 2026. Attached hereto as **Exhibit "E"** is a true and correct copy of Defense counsel's October 1, 2026 correspondence. On October 6, 2026, Defense counsel sent Plaintiff's counsel an email following up on our office's October 1, 2026 correspondence. Attached hereto as **Exhibit "F"** is a true and correct copy of Defense counsel's October 6, 2026 email. As of the date of the filing of this Declaration, Defense counsel has not yet received any response from Plaintiff's counsel.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed this 9th day of October, 2026 at Orange, California.

By: */s/ Tanner E. Petchul*
**TANNER E. PETCHUL**
Declarant

# EXHIBIT A

**BROWN CLARK LE & CEVALLOS, LLP**
**Edwin B. Brown [SBN 89447]**
**22342 Avenida Empresa, Suite 125**
**Rancho Santa Margarita, CA 92688**
**Phone: (949) 459-5900**
**Fax: (949) 713-7722**
**Email: edbrownlaw@gmail.com**

Attorneys for Plaintiff Danny Molina Lira

**DISTRICT COURT OF THE UNITED STATES**

**EASTERN DISTRICT OF CALIFORNIA**

DANNY MOLINA LIRA, an Individual,

Plaintiff,

vs.

CITY OF FONTANA, a California Municipality, and DOES 1-20,

Defendants.

Case No.:

Assigned to Hon.:
Dept.:

**COMPLAINT FOR DAMAGES**

1. Unreasonable Search and Seizure—Excessive Force – (42 U.S.C. § 1983);
2. Due Process – Denial of Medical Care (42 U.S.C. § 1983);
3. Unlawful/False Arrest (42 U.S.C. § 1983);
4. Municipal Liability – Inadequate Training (42 U.S.C. § 1983);
5. Municipal Liability – Ratification (42 U.S.C. § 1983);
6. Battery;
7. Negligence ;
8. Violation of Cal. Civil Code § 52.1.

**DEMAND FOR JURY TRIAL**

Plaintiff Danny Molina Lira ("Plaintiff"), for his Complaint against Defendants City of Fontana ("City") and DOES 1-20, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments of the United States Constitution.

2. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the parties reside in San Bernardino County and all incidents, events, and occurrences giving rise to this action occurred in San Bernardino County.

## INTRODUCTION

4. This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights of Plaintiff under the United States Constitution and state law in connection with the battery of Plaintiff on April 1, 2025, by members of the Fontana Police Department.

## PARTIES

5. At all relevant times, Plaintiff was an individual residing in the City of Rialto.

6. At all relevant times, Defendant City is and was a municipal corporation existing under the laws of the State of California. The City is a chartered subdivision of the State of California with the capacity to be sued. The City is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the City Police Department and its agents and employees.

7. At all relevant times, Defendant City was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the City Police Department and its employees and agents complied with the laws of the United States and of the State of California.

8. At all relevant times, Defendant City was the employer of Defendant DOES 1-20. Defendant DOES 1-10 ("DOE Officers") are police officers working for the City of Fontana Police Department. At all relevant times, DOE Officers were acting under color of law within the course and scope of their duties as police officers for the City of Fontana Police Department. DOE Officers were acting with the complete authority and ratification of their principal, Defendant City.

9. Defendant DOES 11-20 ("DOE Supervisors") are supervisorial, managerial and policymaking employees of the City of Fontana and its Police Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the City Police Department. DOES 11-20 were acting with the complete authority and ratification of their principal, Defendant City. On information and belief, DOES 1-20 were residents of the City of Fontana.

10. In doing the acts and failing and omitting to act as hereinafter described, DOE Officers were acting on the implied and actual permission and consent of Defendant DOES 11-20.

11. In doing the acts and failing and omitting to act as hereinafter described, DOE Officers were acting on the implied and actual permission and consent of the City.

12. The true names and capacities, whether individual, corporate, association, or otherwise of Defendant DOES 1-20, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

13. At all times mentioned herein, each and every Defendant was the agent of

each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

14. All the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all the acts complained of herein.

15. DOES 1-20 are sued in their individual capacity.

16. On or around September 29, 2025, Plaintiff filed a comprehensive and timely claim for damages with the City of Fontana pursuant to applicable sections of the California Government Code.

17. On October 2, 2025, the City rejected Plaintiff's claim. A copy of Plaintiff's Right to Sue Letter is attached as **Exhibit A.**

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

18. On April 1, 2025, at approximately 1:30 P.M., at Plaintiff's home located at 1750 W. Townsend Street, in the City of Rialto, California, Defendant DOES 1-10 (driving unmarked vehicles and dressed in plain clothes) accosted Plaintiff and his minor daughter on his driveway. They then proceeded to chase Plaintiff's child with an AR15-like weapon and to violently beat Plaintiff, as he questioned their actions, causing Plaintiff severe injuries. Defendants then falsely arrested Plaintiff for allegedly violating Cal. Penal Code § 148(a)(1).

19. At no time, and specifically at the time of the battery and other uses of force against Plaintiff, did Plaintiff pose an immediate threat of death or bodily injury to the Officers or to anyone else.

20. After the beating that caused Plaintiff multiple injuries, Defendants did not summon medical care for Plaintiff even though he was in obvious and critical need of emergency medical care and treatment. Defendant DOES 1-10 did not timely summon

medical care or permit medical personnel to treat Plaintiff. The delay of medical care caused Plaintiff extreme physical and emotional pain and suffering.

**FIRST CLAIM FOR RELIEF**
**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**
**(Against Defendant DOES 1-10)**

21. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 20 of his Complaint with the same force and effect ,as if fully set forth here.

22. On April 1, 2025, at approximately 1:30 p.m., Defendant DOES 1-10 approached Plaintiff on the driveway of Plaintiff's home located in Rialto, California. Defendants then proceeded to assault and batter Plaintiff.

23. Defendants' beating of Plaintiff was without justification. Plaintiff did not make any threatening moves or make any threatening statements to the Officers. Plaintiff did not try to flee the Officers. Defendants' unjustified use of force against Plaintiff deprived him of his right to be secure in his person against unreasonable searches and seizures, as guaranteed to him under the Fourth Amendment of the United States Constitution and as applied to state actors by the Fourteenth Amendment.

24. Defendants' use of force was excessive and unreasonable, particularly because Plaintiff posed no immediate threat to the Officers. At all relevant times, Plaintiff was unarmed.

25. Defendants' use of force violated the Defendant Officers' own training and standard police officer training.

26. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

27. The conduct of Defendant DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and, therefore, warrants the imposition of exemplary and punitive damages as to Defendant DOES 1-10.

//

**SECOND CLAIM FOR RELIEF**
**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**
**(Against Defendant DOES 1-10)**

28. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 27 of the Complaint with the same force and effect, as if fully set forth here.

29. After being beaten by Defendants, Plaintiff was immobile and in obvious and critical need of emergency medical care and treatment. Defendant DOES 1-10 did not timely summon medical care or permit medical personnel to treat Plaintiff. The delay of medical care to Plaintiff caused Plaintiff extreme physical and emotional pain and suffering.

30. The denial of medical care by Defendant DOES 1-10, as well deprived him of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and as applied to state actors by the Fourteenth Amendment.

31. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

32. Defendant DOES 1-10 knew that failure to provide timely medical treatment to Plaintiff could result in further significant injury or the unnecessary and wanton infliction of pain, but they disregarded that serious medical need, causing Plaintiff great bodily harm.

33. The conduct of DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-10.

34. As a result of their misconduct, Defendant DOES 1-10, are liable for Plaintiff's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

//

**THIRD CLAIM FOR RELIEF**
**Unreasonable Search and Seizure - False Arrest (42 U.S.C. § 1983)**
**(Against Defendant DOES 1-10)**

35. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 34 of the Complaint with the same force and effect, as if fully set forth here.

36. To Plaintiff's continuing harm, after being accosted and beaten by Defendants, Plaintiff was summarily arrested and taken into custody, transported to and booked into The City of Fontana jail facility.

37. Plaintiff was ultimately told that he had been arrested for violating California Penal Code Section 148(a)(1) and is currently undergoing prosecution for this section.

38. At no time did Plaintiff resist, delay, or obstruct Defendant Does 1-10 in the performance of their duties. In fact, the entire duration of the interaction between Defendant Does 1-10 and Plaintiff prior to plaintiff's beating and arrest lasted only a few seconds.

39. The false arrest and incarceration of Plaintiff deprived him of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and as applied to state actors by the Fourteenth Amendment.

40. The conduct of DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-10.

41. As a result of their misconduct, Defendant DOES 1-10, are liable for Plaintiff's injuries, either because they were integral participants in the false arrest of Plaintiff or because they failed to intervene to prevent these violations.

42. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

//

**FOURTH CLAIM FOR RELIEF**
**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**
**(Against Defendants City and DOES 11-20)**

43. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 42 of his Complaint with the same force and effect, as if fully set forth here.

44. Defendant DOES 1-10 acted under color of law.

45. The acts of Defendant DOES 1-10, including the assault and battery of Plaintiff and the denial of prompt and necessary medical care, deprived Plaintiff of his rights under the United States Constitution.

46. The training policies of Defendant City were not adequate to train its officers to handle the usual and recurring situations with which they must deal. This includes training polices that have been adopted and maintained by the City.

47. The failure of Defendant City to provide adequate training caused the deprivation of Plaintiff's rights by Defendant DOES 1-10; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's rights as to be a moving force that caused the ultimate injuries.

48. By reason of the aforementioned acts and omissions, Plaintiff suffered significant emotional distress and pain and suffering.

49. Accordingly, Defendants City and DOES 11-20 are each liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

**FIFTH CLAIM FOR RELIEF**
**Municipal Liability – Ratification (42 U.S.C. § 1983)**
**(Against Defendants City and DOES 11-20)**

50. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 49 of his Complaint with the same force and effect, as if fully set forth here.

51. Defendant DOE Officers acted under color of law.

//

52. The acts of Defendant DOE Officers, as set forth above, including assaulting and battering Plaintiff, then denying Plaintiff prompt and necessary medical care, deprived Plaintiff of his particular rights under the United States Constitution.

53. Upon information and belief, a final policymaker acting under color of law, who had final policymaking authority concerning the acts of Defendant DOE Officers, ratified their acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of Defendant DOE Officers' acts.

54. Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendant DOE Officers were "within policy."

55. On information and belief, Defendant DOE Officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Plaintiff's beating.

56. By reason of the aforementioned acts and omissions, Plaintiff has suffered extreme emotional distress and pain and suffering.

## SIXTH CLAIM FOR RELIEF
## Battery
## (Against All Defendants)

57. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 56 of his Complaint with the same force and effect, as if fully set forth here.

58. On April 1, 2025, at approximately 1:30 p.m. in Rialto, California, Defendant DOES 1-10 approached Plaintiff on foot and, without justification, repeatedly struck Plaintiff, seriously injuring him.

59. At the time the Officers used unwarranted force against him, Plaintiff did not pose an immediate threat of bodily injury to the Officers or to anyone else. Therefore, Defendants' use of force was excessive and objectively unreasonable.

60. As a direct and proximate result of the conduct of Defendant DOES 1-10 as alleged above, Plaintiff sustained physical injuries, emotional distress, and pain and suffering.

61. Defendant City is vicariously liable for the wrongful acts of Defendant DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employees' acts would subject him or her to liability.

62. The conduct of DOES 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiff to an award of exemplary and punitive damages as to Defendant DOES 1-10.

**SEVENTH CLAIM FOR RELIEF**
**Negligence**
**(Against all Defendants)**

63. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 62 of his Complaint with the same force and effect as if fully set forth here.

64. Police officers, including Defendant DOES 1-10 here, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary.

65. Defendant DOES 1-10 breached this duty of care. The actions and inactions of Defendant DOES 1-10 were negligent and reckless including, but not limited to, the failure to properly and adequately assess the need to use force against Plaintiff, the failure to provide prompt medical care to Plaintiff, and the failure to properly train and supervise employees, including Defendant DOES 1-10.

66. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Plaintiff suffered severe physical pain and emotional distress.

67. Defendant City is vicariously liable for the wrongful acts of DOES 1-20, pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employees' acts would subject him or her to liability.

## EIGHTH CLAIM FOR RELIEF
## (Violation of Cal. Civil Code § 52.1)
## (Against All Defendants)

68. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 67 of his Complaint with the same force and effect, as if fully set forth here.

69. California Civil Code, Section 52.1 ("Bane Act"), prohibits any person, including a police officer, from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, including using unconstitutionally excessive force.

70. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred if a person displays a reckless disregard for another person's civil rights.

71. Defendant DOES 1-10, while working for the City and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Plaintiff, including assaulting and battering Plaintiff without justification and denying him necessary medical care. Defendants' beating of Plaintiff was excessive, objectively unreasonable, and reckless.

72. Plaintiff was unarmed at the time of his beating, had not committed any violence or threat to commit violence against anyone, including the Officers. Plaintiff did not pose an immediate threat of death or serious bodily injury to any person.

73. Defendants' battery of Plaintiff and other uses of force violated basic law enforcement training and generally accepted law enforcement standards. Defendants beat Plaintiff without any legal justification.

74. When Defendant DOES 1-10 assaulted and battered Plaintiff, he was not presenting any immediate threat of bodily injury to the Officers. Defendants interfered with Plaintiff's civil rights to be free from unreasonable searches and seizures, to be free from excessive force, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

75. Defendant DOES 1-10 intentionally committed the above acts to discourage Plaintiff from exercising his civil rights or to prevent him from exercising such rights, which he was fully entitled to enjoy.

76. On information and belief, DOES 1-10 intended to interfere with Plaintiff's Constitutional rights and did interfere with Plaintiff's Constitutional rights. Plaintiff understood that the violent acts committed by Defendant DOES 1-10 intended to discourage him from exercising his constitutional rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

77. Defendant DOES 1-10 successfully interfered with the constitutional rights of Plaintiff.

78. The conduct of Defendant DOES 1-10 was a substantial factor in causing Plaintiff's harms, losses, injuries, and damages.

79. Defendant City is vicariously liable for the wrongful acts of Defendant DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

80. Defendant DOES 11-20 are vicariously liable under California law and the doctrine of *respondeat superior*.

81. The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiff's rights, justifying an award of exemplary and punitive damages as to Defendant DOES 1-10.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Danny Molina Lira requests entry of judgment in his favor and against Defendants City of Fontana and DOES 1-20, inclusive, as follows:

1. For compensatory damages, under federal and state law, in an amount to be proven at trial;

2. For general damages, including damages for emotional distress and pain and suffering, in an amount to be proven at trial;

3. For punitive damages;

4. For interest;

5. For reasonable attorneys' fees;

6. For costs of suit; and

7. For such further other relief as the Court may deem just, proper, and appropriate.

Dated: March 27, 2026.

BROWN CLARK LE & CEVALLOS, LLP

By:____________________
Edwin B. Brown
Attorneys for Plaintiff Danny Molina Lira

**DEMAND FOR JURY TRIAL**

Plaintiff Danny Molina Lira hereby demands that his claims presented in this Complaint be heard by a jury of his peers.

Dated: March 27, 2026.

BROWN CLARK LE & CEVALLOS, LLP

By:____________________
Edwin B. Brown
Attorneys for Plaintiff Danny Molina Lira

# Exhibit A

CARL WARREN & COMPANY
Claims Management and Solutions

A VENBROOK Company

October 2, 2025

Edwin B. Brown, Esq.
22342 Avenida Empresa, Suite 125
Rancho Santa Margarita, CA 92688

| | | | |
|---|---|---|---|
| RE: | Principal | : | City of Fontana |
| | Claimant | : | Danny Lira |
| | Date of Loss | : | 04/01/2025 |
| | Carl Warren File No. | : | 3116558 |

Mr. Brown:

Carl Warren & Company is the liability claims administrator for the City of Fontana.

Notice is hereby given that the claim you presented to the City Clerk on September 29, 2025, was rejected on October 2, 2025.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date of this notice which was personally delivered or deposited in the mail to file a court action in a superior court of the State of California on this claim. See Government Code section 945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Should you have any questions regarding this claim, please feel free to contact me at the phone number stated below.

Sincerely,
Tyler Conlin | Senior Claims Adjuster
tconlin@carlwarren.com
Tel: (818) 265-6764 | Fax: (866) 254-4423
CA Entity License No: 2607296
P O Box 2411, Tustin, CA 92781

cc: City of Fontana

# PROOF OF SERVICE

I, the undersigned, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years, and not a party to the within action. I am an employee of or agent for CARL WARREN & COMPANY whose business address is P.O. Box 2411, Tustin, California.

On October 2, 2025 , I served the foregoing document(s): Rejection Notice, to the following party(ies) in this action addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☒ *(BY MAIL)* I caused a true copy of each document, placed in a sealed envelope with postage fully paid, to be placed in the United States mail at Woodland Hills, California. I am "readily familiar" with this firm's business practice for collection and processing of mail, that in the ordinary course of business said document(s) would be deposited with the U.S. Postal Service on that same day. I understand that the service shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ *(BY PERSONAL SERVICE)* I caused to be delivered each such document by hand to each addressee above.

☐ *(BY OVERNIGHT DELIVERY)* I caused a true copy of each document, placed in a sealed envelope with delivery fees provided for, to be deposited in a box regularly maintained by **Federal Express®(FEDEX).** I am readily familiar with this firm's practice for collection and processing of documents for overnight delivery and know that in the ordinary course of business practice the document(s) described above will be deposited in a box or other facility regularly maintained by UPS or delivered to a courier or driver authorized by UPS to receive documents on the same date it is placed for collection.

☐ *(BY FACSIMILE)* By use of facsimile machine number , I served a copy of the within document(s) on the above interested parties at the facsimile numbers listed above. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

☐ *(BY ELECTRONIC SERVICE)* Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at their electronic notification addresses. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Executed on October 2, 2025, in Woodland Hills, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Ann Marie Tannous

SIGNER NAME
Annamarie Tannous

**SERVICE LIST**

| | |
|---|---|
| Edwin B. Brown, Esq.<br>22342 Avenida Empresa, Suite 125<br>Rancho Santa Margarita, CA 92688 | |

# EXHIBIT B

**BROWN CLARK LE & CEVALLOS, LLP**
**Edwin B. Brown [SBN 89447]**
**22342 Avenida Empresa, Suite 125**
**Rancho Santa Margarita, CA 92688**
**Phone: (949) 459-5900**
**Fax: (949) 713-7722**
**Email: edbrownlaw@gmail.com**

Attorneys for Plaintiff Danny Molina Lira

**DISTRICT COURT OF THE UNITED STATES**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANNY MOLINA LIRA, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF FONTANA, a California Municipality, and DOES 1-20,<br><br>Defendants. | Case No.: 5:26-cv-01632-JGB<br><br>Assigned to Hon.: Jesus G. Bernal<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. Unreasonable Search and Seizure—Excessive Force – (42 U.S.C. § 1983);<br>2. Due Process – Denial of Medical Care (42 U.S.C. § 1983);<br>3. Unlawful/False Arrest (42 U.S.C. § 1983);<br>4. Municipal Liability – Inadequate Training (42 U.S.C. § 1983);<br>5. Municipal Liability – Ratification (42 U.S.C. § 1983);<br>6. Battery;<br>7. Negligence ;<br>8. Violation of Cal. Civil Code § 52.1.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Danny Molina Lira ("Plaintiff"), for his Complaint against Defendants City of Fontana ("City") and DOES 1-20, alleges as follows:

///

///

## JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments of the United States Constitution.

2. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the parties reside in San Bernardino County and all incidents, events, and occurrences giving rise to this action occurred in San Bernardino County.

## INTRODUCTION

4. This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights of Plaintiff under the United States Constitution and state law in connection with the battery of Plaintiff on April 1, 2025, by members of the Fontana Police Department.

## PARTIES

5. At all relevant times, Plaintiff was an individual residing in the City of Rialto.

6. At all relevant times, Defendant City is and was a municipal corporation existing under the laws of the State of California. The City is a chartered subdivision of the State of California with the capacity to be sued. The City is responsible for the actions, omissions,

policies, procedures, practices, and customs of its various agents and agencies, including the City Police Department and its agents and employees.

7. At all relevant times, Defendant City was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the City Police Department and its employees and agents complied with the laws of the United States and of the State of California.

8. At all relevant times, Defendant City was the employer of Defendant DOES 1-20. Defendant DOES 1-10 ("DOE Officers") are police officers working for the City of Fontana Police Department. At all relevant times, DOE Officers were acting under color of law within the course and scope of their duties as police officers for the City of Fontana Police Department. DOE Officers were acting with the complete authority and ratification of their principal, Defendant City.

9. Defendant DOES 11-20 ("DOE Supervisors") are supervisorial, managerial and policymaking employees of the City of Fontana and its Police Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the City Police Department. DOES 11-20 were acting with the complete authority and ratification of their principal, Defendant City. On information and belief, DOES 1-20 were residents of the City of Fontana.

10. In doing the acts and failing and omitting to act as hereinafter described, DOE Officers were acting on the implied and actual permission and consent of Defendant DOES 11-20.

11. In doing the acts and failing and omitting to act as hereinafter described, DOE Officers were acting on the implied and actual permission and consent of the City.

12. The true names and capacities, whether individual, corporate, association, or otherwise of Defendant DOES 1-20, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

13. At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

14. All the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all the acts complained of herein.

15. DOES 1-20 are sued in their individual capacity.

16. On or around September 29, 2025, Plaintiff filed a comprehensive and timely claim for damages with the City of Fontana pursuant to applicable sections of the California Government Code.

17. On October 2, 2025, the City rejected Plaintiff's claim. A copy of Plaintiff's Right to Sue Letter is attached as **Exhibit A.**

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

18. On April 1, 2025, at approximately 1:30 P.M., at Plaintiff's home located at 1750 W. Townsend Street, in the City of Rialto, California, Defendant DOES 1-10 (driving unmarked

vehicles and dressed in plain clothes) accosted Plaintiff and his minor daughter on his driveway. They then proceeded to chase Plaintiff's child with an AR15-like weapon and to violently beat Plaintiff, as he questioned their actions, causing Plaintiff severe injuries. Defendants then falsely arrested Plaintiff for allegedly violating Cal. Penal Code § 148(a)(1).

19. At no time, and specifically at the time of the battery and other uses of force against Plaintiff, did Plaintiff pose an immediate threat of death or bodily injury to the Officers or to anyone else.

20. After the beating that caused Plaintiff multiple injuries, Defendants did not summon medical care for Plaintiff even though he was in obvious and critical need of emergency medical care and treatment. Defendant DOES 1-10 did not timely summon medical care or permit medical personnel to treat Plaintiff. The delay of medical care caused Plaintiff extreme physical and emotional pain and suffering.

**FIRST CLAIM FOR RELIEF**
**Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)**
**(Against Defendant DOES 1-10)**

21. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 20 of his Complaint with the same force and effect, as if fully set forth here.

22. On April 1, 2025, at approximately 1:30 p.m., Defendant DOES 1-10 approached Plaintiff on the driveway of Plaintiff's home located in Rialto, California. Defendants then proceeded to assault and batter Plaintiff.

23. Defendants' beating of Plaintiff was without justification. Plaintiff did not make any threatening moves or make any threatening statements to the Officers. Plaintiff did not try to flee the Officers. Defendants' unjustified use of force against Plaintiff deprived him of his right to be secure in his person against unreasonable searches and seizures, as guaranteed to him under

the Fourth Amendment of the United States Constitution and as applied to state actors by the Fourteenth Amendment.

24. Defendants' use of force was excessive and unreasonable, particularly because Plaintiff posed no immediate threat to the Officers. At all relevant times, Plaintiff was unarmed.

25. Defendants' use of force violated the Defendant Officers' own training and standard police officer training.

26. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

27. The conduct of Defendant DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and, therefore, warrants the imposition of exemplary and punitive damages as to Defendant DOES 1-10.

**SECOND CLAIM FOR RELIEF**
**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**
**(Against Defendant DOES 1-10)**

28. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 27 of the Complaint with the same force and effect, as if fully set forth here.

29. After being beaten by Defendants, Plaintiff was immobile and in obvious and critical need of emergency medical care and treatment. Defendant DOES 1-10 did not timely summon medical care or permit medical personnel to treat Plaintiff. The delay of medical care to Plaintiff caused Plaintiff extreme physical and emotional pain and suffering.

30. The denial of medical care by Defendant DOES 1-10, as well deprived him of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and as applied to state actors by the Fourteenth Amendment.

31. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

32. Defendant DOES 1-10 knew that failure to provide timely medical treatment to Plaintiff could result in further significant injury or the unnecessary and wanton infliction of pain, but they disregarded that serious medical need, causing Plaintiff great bodily harm.

33. The conduct of DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-10.

34. As a result of their misconduct, Defendant DOES 1-10, are liable for Plaintiff's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

**THIRD CLAIM FOR RELIEF**
**Unreasonable Search and Seizure - False Arrest (42 U.S.C. § 1983)**
**(Against Defendant DOES 1-10)**

35. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 34 of the Complaint with the same force and effect, as if fully set forth here.

36. To Plaintiff's continuing harm, after being accosted and beaten by Defendants, Plaintiff was summarily arrested and taken into custody, transported to and booked into The City of Fontana jail facility.

37. Plaintiff was ultimately told that he had been arrested for violating California Penal Code Section 148(a)(1) and is currently undergoing prosecution for this section.

38. At no time did Plaintiff resist, delay, or obstruct Defendant Does 1-10 in the performance of their duties. In fact, the entire duration of the interaction between Defendant Does 1-10 and Plaintiff prior to plaintiff's beating and arrest lasted only a few seconds.

39. The false arrest and incarceration of Plaintiff deprived him of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and as applied to state actors by the Fourteenth Amendment.

40. The conduct of DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-10.

41. As a result of their misconduct, Defendant DOES 1-10, are liable for Plaintiff's injuries, either because they were integral participants in the false arrest of Plaintiff or because they failed to intervene to prevent these violations.

42. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

## FOURTH CLAIM FOR RELIEF
## Municipal Liability – Failure to Train (42 U.S.C. § 1983)
## (Against Defendants City and DOES 11-20)

43. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 42 of his Complaint with the same force and effect, as if fully set forth here.

44. Defendant DOES 1-10 acted under color of law.

45. The acts of Defendant DOES 1-10, including the assault and battery of Plaintiff and the denial of prompt and necessary medical care, deprived Plaintiff of his rights under the United States Constitution.

46. The training policies of Defendant City police department were not adequate to train its police officers with regard to wearing identifying uniforms or insignia, verbally identifying themselves, deploying assault rifles, conducting law enforcement operations outside of their normal jurisdiction, using force against unarmed civilians, and rendering aid. As a result, City police officers are not able to handle the usual and recurring situations with which they must deal, including making contact with unarmed individuals and their children. These inadequate training policies existed prior to the date of this incident and continue to this day.

47. The Defendant police department was deliberately indifferent to the known or obvious consequences of its failure to adequately train its police officers. This inadequate training includes failing to teach officers to properly identify themselves when engaging with frightened, unarmed community members and the proper deployment of assault rifles, prior to using force.

Defendant City was aware that failure to implement some sort of training with regard to their officers' extra-jurisdictional deployment to a neighboring city, while wearing plainclothes and carrying assault rifles when encountering unarmed civilians, including children, would result in continuing to have numerous unreasonable and dangerous encounters with unarmed individuals annually.

48. By failing to provide adequate training to Defendant City's police officers, Defendants acted with an intentional, reckless, and callous disregard for the life of PLAINTIFF and Plaintiffs' constitutional rights. Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

///

49. The failure of Defendant City to provide adequate training caused the deprivation of Plaintiff's rights by Defendant DOES 1-10; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's rights as to be a moving force that caused the ultimate injuries.

50. By reason of the aforementioned acts and omissions, Plaintiff suffered significant emotional distress and pain and suffering.

51. Accordingly, Defendants City and DOES 11-20 are each liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

**FIFTH CLAIM FOR RELIEF**
**Municipal Liability – Ratification (42 U.S.C. § 1983)**
**(Against Defendants City and DOES 11-20)**

52. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 51 of his Complaint with the same force and effect, as if fully set forth here.

53. Defendant DOE Officers acted under color of law.

54. The acts of Defendant DOE Officers, as set forth above, including assaulting and battering Plaintiff, then denying Plaintiff prompt and necessary medical care, deprived Plaintiff of his particular rights under the United States Constitution.

55. Any reasonable policymaker would recognize that sending plain clothes officers with AR-15 style weapons into residential neighborhoods outside of Fontana jurisdiction without clear protocols for identification and de-escalation creates a highly predictable risk of confrontation, confusion, and excessive force producing such an obvious risk of constitutional violations that FPD policymakers can reasonably be said to have been deliberately indifferent to the need for training on these issues.

///

56. Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendant DOE Officers were "within policy."

57. On information and belief, Defendant DOE Officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Plaintiff's beating.

58. By reason of the aforementioned acts and omissions, Plaintiff has suffered extreme emotional distress and pain and suffering.

## SIXTH CLAIM FOR RELIEF
## Battery
## (Against All Defendants)

59. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 58 of his Complaint with the same force and effect, as if fully set forth here.

60. On April 1, 2025, at approximately 1:30 p.m. in Rialto, California, Defendant DOES 1-10 approached Plaintiff on foot and, without justification, repeatedly struck Plaintiff, seriously injuring him.

61. At the core of Plaintiff's claims is the conduct of the Defendant officers in this matter. Here, Defendant officers:

a) initiated contact with Plaintiff and his daughter;

b) were dressed in plain clothes and failed to identify themselves as law enforcement when confronting Plaintiff and his daughter;

c) decided to chase Plaintiff's minor daughter while AR-15 type assault rifles;

d) initiated physical violence against Plaintiff when he questioned why they were chasing his child;

e) continued beating Plaintiff after he was subdued;

f) denied medical care to Plaintiff after beating him.

62. Any physical actions by Plaintiff during his encounter with Defendant police officers characterized as "resistance" or "obstruction" by Defendant officers occurred after, and was caused by, Defendant officers' constitutional violations.

63. Any "resistance" or "obstruction" alleged by Defendant officers was a natural and reasonable response by Plaintiff to being violently attacked by unidentified individuals in plainclothes carrying assault weapons. Plaintiff had no way of knowing these individuals were police officers, and reasonably believed he was being attacked by criminals, and that any physical reaction was in lawful self-defense. Defendant officers' constitutional violations (failure to identify, unjustified use of force) thus occurred *first* and caused Plaintiff's alleged "resistance" or "obstruction."

64. At the time the Officers used unwarranted force against him, Plaintiff did not pose an immediate threat of bodily injury to the Officers or to anyone else. Therefore, Defendants' use of force was excessive and objectively unreasonable.

65. As a direct and proximate result of the conduct of Defendant DOES 1-10 as alleged above, Plaintiff sustained physical injuries, emotional distress, and pain and suffering.

66. Defendant City is vicariously liable for the wrongful acts of Defendant DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employees' acts would subject him or her to liability.

67. The conduct of DOES 1-10 was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiff to an award of exemplary and punitive damages as to Defendant DOES 1-10.

**SEVENTH CLAIM FOR RELIEF**
**Negligence**
**(Against all Defendants)**

68. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 67 of his Complaint with the same force and effect as if fully set forth here.

69. Police officers, including Defendant DOES 1-10 here, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary.

70. Defendant DOES 1-10 breached this duty of care. The actions and inactions of Defendant DOES 1-10 were negligent and reckless including, but not limited to, the failure to properly and adequately assess the need to use force against Plaintiff, the failure to provide prompt medical care to Plaintiff, and the failure to properly train and supervise employees, including Defendant DOES 1-10.

71. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Plaintiff suffered severe physical pain and emotional distress.

72. Defendant City is vicariously liable for the wrongful acts of DOES 1-20, pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employees' acts would subject him or her to liability.

///

///

///

///

**<u>EIGHTH CLAIM FOR RELIEF</u>**
**<u>(Violation of Cal. Civil Code § 52.1)</u>**
**(Against All Defendants)**

73. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 72 of his Complaint with the same force and effect, as if fully set forth here.

74. California Civil Code, Section 52.1 ("Bane Act"), prohibits any person, including a police officer, from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, including using unconstitutionally excessive force.

75. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred if a person displays a reckless disregard for another person's civil rights.

76. Defendant DOES 1-10, while working for the City and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Plaintiff, including assaulting and battering Plaintiff without justification and denying him necessary medical care. Defendants' beating of Plaintiff was excessive, objectively unreasonable, and reckless.

77. Plaintiff was unarmed at the time of his beating, had not committed any violence or threat to commit violence against anyone, including the Officers. Plaintiff did not pose an immediate threat of death or serious bodily injury to any person.

78. Defendants' battery of Plaintiff and other uses of force violated basic law enforcement training and generally accepted law enforcement standards. Defendants beat Plaintiff without any legal justification.

79. When Defendant DOES 1-10 assaulted and battered Plaintiff, he was not presenting any immediate threat of bodily injury to the Officers. Defendants interfered with Plaintiff's civil rights to be free from unreasonable searches and seizures, to be free from excessive force, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

80. Defendant DOES 1-10 intentionally committed the above acts to discourage Plaintiff from exercising his civil rights or to prevent him from exercising such rights, which he was fully entitled to enjoy.

81. On information and belief, DOES 1-10 intended to interfere with Plaintiff's Constitutional rights and did interfere with Plaintiff's Constitutional rights. Plaintiff understood that the violent acts committed by Defendant DOES 1-10 intended to discourage him from exercising his constitutional rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

82. Defendant DOES 1-10 successfully interfered with the constitutional rights of Plaintiff.

83. The conduct of Defendant DOES 1-10 was a substantial factor in causing Plaintiff's harms, losses, injuries, and damages.

84. Defendant City is vicariously liable for the wrongful acts of Defendant DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

85. Defendant DOES 11-20 are vicariously liable under California law and the doctrine of *respondeat superior*.

86. The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiff's rights, justifying an award of exemplary and punitive damages as to Defendant DOES 1-10.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Danny Molina Lira requests entry of judgment in his favor and against Defendants City of Fontana and DOES 1-20, inclusive, as follows:

1. For compensatory damages, under federal and state law, in an amount to be proven at trial;

2. For general damages, including damages for emotional distress and pain and suffering, in an amount to be proven at trial;

3. For punitive damages;

4. For interest;

5. For reasonable attorneys' fees;

6. For costs of suit; and

7. For such further other relief as the Court may deem just, proper, and appropriate.

Dated: July 23, 2026.

BROWN CLARK LE & CEVALLOS, LLP

By:______________________________
Michael C.P. Clark
Attorneys for Plaintiff Danny Molina Lira

DEMAND FOR JURY TRIAL

Plaintiff Danny Molina Lira hereby demands that his claims presented in this Complaint be heard by a jury of his peers.

Dated: July 23, 2026. BROWN CLARK LE & CEVALLOS, LLP



By:________________________________
Michael C.P. Clark
Attorneys for Plaintiff Danny Molina Lira

# Exhibit A

CARL WARREN & COMPANY
Claims Management and Solutions

A VENBROOK Company

October 2, 2025

Edwin B. Brown, Esq.
22342 Avenida Empresa, Suite 125
Rancho Santa Margarita, CA 92688

| | | | |
|---|---|---|---|
| RE: | Principal | : | City of Fontana |
| | Claimant | : | Danny Lira |
| | Date of Loss | : | 04/01/2025 |
| | Carl Warren File No. | : | 3116558 |

Mr. Brown:

Carl Warren & Company is the liability claims administrator for the City of Fontana.

Notice is hereby given that the claim you presented to the City Clerk on September 29, 2025, was rejected on October 2, 2025.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date of this notice which was personally delivered or deposited in the mail to file a court action in a superior court of the State of California on this claim. See Government Code section 945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Should you have any questions regarding this claim, please feel free to contact me at the phone number stated below.

Sincerely,
Tyler Conlin | Senior Claims Adjuster
tconlin@carlwarren.com
Tel: (818) 265-6764 | Fax: (866) 254-4423
CA Entity License No: 2607296
P O Box 2411, Tustin, CA 92781

cc: City of Fontana

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 225 W. Hospitality Lane, Suite 314, San Bernardino, Ca.

On July 24, 2026, I served the foregoing: FIRST AMENDED COMPLAINT, on interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

PLEASE REFER TO SERVICE LIST

[ ] (BY MAIL) I placed such envelope with postage thereon fully paid in the United States mail at San Bernardino, California. I am "readily familiar" with this firm's practice of collecting and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more that 1-day after date of deposit for mailing in affidavit.

[X] BY ELECTRONIC MAIL – BY E-MAIL OR ELECTRONIC TRANSMISSION: I caused a copy of the document(s) to be sent from e-mail address nedy@bclclaw.org to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X] (STATE) I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 24, 2026, at San Bernardino, California.

***Nedy Dominguez***
Nedy Dominguez

Case 5:26-cv-01632-JGB-DTB Document 27-1 Filed 07/24/26 Page 214 of 182 Page ID #:5270

DANNY MOLINA LIRA vs. CITY OF FONTANA
Case No: 5:26-cv-01632-JGB

JESSE K. COX (SBN 285218)
jcox@lynberg.com
TANNER E. PETCHUL (SBN 364352)
tpetchul@lynberg.com
LYNBERG & WATKINS A Professional Corporation
1100 W. Town & Country Road, Suite 1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

# EXHIBIT C

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

**BROWN CLARK LE & CEVALLOS, LLP**
Edwin B. Brown [SBN 89447]
22342 Avenida Empresa, Suite 125
Rancho Santa Margarita, CA 92688
Phone: (949) 459-5900
Fax: (949) 713-7722
Email: edbrownlaw@gmail.com

*Attorneys for Plaintiff, DANNY MOLINA LIRA*

**DISTRICT COURT OF THE UNITED STATES**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANNY MOLINA LIRA, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF FONTANA, a California Municipality, MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOES 6-10,<br><br>Defendants. | Case No.: 5:26-cv-01632-JGB<br><br>Assigned to Hon.: Jesus G. Bernal<br><br>**SECOND AMENDED COMPLAINT**<br><br>1. Unreasonable Search and Seizure—Excessive Force – (42 U.S.C. § 1983);<br>2. Due Process – Denial of Medical Care (42 U.S.C. § 1983);<br>3. Unlawful/False Arrest (42 U.S.C. § 1983);<br>4. Municipal Liability – Inadequate Training (42 U.S.C. § 1983);<br>5. Municipal Liability – Ratification (42 U.S.C. § 1983);<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Danny Molina Lira ("Plaintiff"), for his Complaint against Defendants City of Fontana ("City"), Mark Aranda, Dominique Aneset, Aaron Alcala, Brandon McCaulle, Jon Vantuinen, and DOES 6-10, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments of the United States Constitution.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the parties reside in San Bernardino County and all incidents, events, and occurrences giving rise to this action occurred in San Bernardino County.

**INTRODUCTION**

3. This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights of Plaintiff under the United States Constitution in connection with the battery of Plaintiff on April 1, 2025, by members of the Fontana Police Department.

**PARTIES**

4. At all relevant times, Plaintiff was an individual residing in the City of Rialto.

5. At all relevant times, Defendant City is and was a municipal corporation existing under the laws of the State of California. The City is a chartered subdivision of the State of

California with the capacity to be sued. The City is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the City Police Department and its agents and employees.

6. At all relevant times, Defendant City was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the City Police Department and its employees and agents complied with the laws of the United States and of the State of California.

7. At all relevant times, Defendant City was the employer of Defendants Mark Aranda, Dominique Anesetti, Aaron Alcala, Brandon McCaulley, Jon Vantuinen, and DOES 6-10.

8. Defendant MARK ARANDA is a police officer working for the City of Fontana Police Department. At all relevant times MARK ARANDA was a sergeant working for the City of Fontana Police Department. At all relevant times, MARK ARANDA was acting under color of law within the course and scope of his duties as a police officer for the City of Fontana. MARK ARANDA was acting with the complete authority and ratification of his principal, Defendant City.

9. Defendant DOMINIQUE ANESETTI is a police officer working for the City of Fontana Police Department. At all relevant times, DOMINIQUE ANESETTI was acting under color of law within the course and scope of her duties as a police officer for the City of Fontana. DOMINIQUE ANESETTI was acting with the complete authority and ratification of her principal, Defendant City.

10. Defendant AARON ALCALA is a police officer working for the City of Fontana Police Department. At all relevant times, AARON ALCALA was acting under color of law

within the course and scope of his duties as a police officer for the City of Fontana. AARON ALCALA was acting with the complete authority and ratification of his principal, Defendant City.

11. Defendant BRANDON MCCAULLEY is a police officer working for the City of Fontana Police Department. At all relevant times, BRANDON MCCAULLEY was acting under color of law within the course and scope of his duties as a police officer for the City of Fontana. BRANDON MCCAULLEY was acting with the complete authority and ratification of his principal, Defendant City.

12. Defendant JON VANTUINEN is a police officer working for the City of Fontana Police Department. At all relevant times JON VANTUINEN was a sergeant working for the City of Fontana Police Department. At all relevant times, JON VANTUINEN was acting under color of law within the course and scope of his duties as a police officer for the City of Fontana. JON VANTUINEN was acting with the complete authority and ratification of his principal, Defendant City.

13. Defendant DOES 6-8 ("DOE Officers") are police officers working for the City of Fontana Police Department. At all relevant times, DOE Officers were acting under color of law within the course and scope of their duties as police officers for the City of Fontana Police Department. DOE Officers were acting with the complete authority and ratification of their principal, Defendant City.

14. Defendant DOES 9-10 ("DOE Supervisors") are supervisorial, managerial and policymaking employees of the City of Fontana and its Police Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the City Police Department. DOE Supervisors were acting with the

complete authority and ratification of their principal, Defendant City. On information and belief, DOE Supervisors were residents of the City of Fontana, County of San Bernardino.

15. In doing the acts and failing and omitting to act as hereinafter described, MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers were acting on the implied and actual permission and consent of Defendant DOES 9-10.

16. In doing the acts and failing and omitting to act as hereinafter described, MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers were acting on the implied and actual permission and consent of the City.

17. The true names and capacities, whether individual, corporate, association, or otherwise of Defendant DOES 6-10, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

18. At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

19. All the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose and

scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all the acts complained of herein.

21. MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOEs6-10 are sued in their individual capacity.

22. On or around September 29, 2025, Plaintiff filed a comprehensive and timely claim for damages with the City of Fontana pursuant to applicable sections of the California Government Code.

23. On October 2, 2025, the City rejected Plaintiff's claim. A copy of Plaintiff's Right to Sue Letter is attached as **Exhibit A.**

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

24. On April 1, 2025, at approximately 1:30 P.M., at Plaintiff's home located at 1750 W. Townsend Street, in the City of Rialto, California, Defendants Mark Aranda, Dominique Anesetti, Aaron Alcala, Brandon McCaulley, Jon Vantuinen, and DOE Officers (driving unmarked vehicles and dressed in plain clothes) accosted Plaintiff and his minor daughter on his driveway. Aaron Alcala and Brandon McCalley then proceeded to chase Plaintiff's child, including while Brandon McCalley carried anAR15-like weapon. Mark Aranda, Dominique Anesetti, and Jon Vantuinen violently beat Plaintiff including slamming him into his garage door and taking him down as he questioned their actions, causing Plaintiff severe injuries, including but not limited to a concussion and a broken elbow. Defendants then falsely arrested Plaintiff for allegedly violating Cal. Penal Code § 148(a)(1).

25. At no time, and specifically at the time of the battery and other uses of force against Plaintiff, did Plaintiff pose an immediate threat of death or bodily injury to the Officers or to anyone else.

26. After the beating that caused Plaintiff multiple injuries, including but not limited to a concussion and broken elbow, Defendants did not summon medical care for Plaintiff even though he was in obvious and critical need of emergency medical care and treatment. Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers did not timely summon medical care or permit medical personnel to treat Plaintiff. The delay of medical care caused Plaintiff extreme physical and emotional pain and suffering.

27. Thereafter, Plaintiff was arrested and booked for allegedly violating California Penal Code Section 148(a)(1). The related criminal proceedings are ongoing.

## FIRST CLAIM FOR RELIEF
## Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)
**(Against Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers)**

28. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 27 of his Complaint with the same force and effect, as if fully set forth here.

29. On April 1, 2025, at approximately 1:30 p.m., Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers approached Plaintiff on the driveway of Plaintiff's home located in Rialto, California. Defendants MARK ARANDA, DOMINIQUE ANESETTI, and JON VANTUINEN then proceeded to assault and batter Plaintiff.

30. Defendants' beating of Plaintiff was without justification. Plaintiff did not make any threatening moves or make any threatening statements to the Officers. Plaintiff did not try to flee the Officers. Defendants' unjustified use of force against Plaintiff deprived him of his right to be secure in his person against unreasonable searches and seizures, as guaranteed to him under

the Fourth Amendment of the United States Constitution and as applied to state actors by the Fourteenth Amendment.

31. Defendants' use of force was excessive and unreasonable, particularly because Plaintiff posed no immediate threat to the Officers. At all relevant times, Plaintiff was unarmed.

32. Defendants' use of force violated the Defendant Officers' own training and standard police officer training.

33. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

34. MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers are directly liable for Plaintiff's injuries, either because they were integral participants in the use of excessive force and because they failed to intervene to prevent the use of excessive force.

35. The conduct of Defendant MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and, therefore, warrants the imposition of exemplary and punitive damages as to Defendant MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers.

## SECOND CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

**(Against Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers)**

36. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 35 of the Complaint with the same force and effect, as if fully set forth here.

37. After being beaten by Defendants, including being slammed into his garage and taken down onto the ground, Plaintiff was immobile and in obvious and critical need of emergency medical care and treatment. Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers did not timely summon medical care or permit medical personnel to treat Plaintiff. The delay of medical care to Plaintiff caused Plaintiff extreme physical and emotional pain and suffering.

38. The denial of medical care by Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, as well deprived him of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and as applied to state actors by the Fourteenth Amendment.

39. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

40. Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers knew that failure to provide timely medical treatment to Plaintiff could result in further significant injury or the unnecessary and wanton infliction of pain, but they disregarded that serious medical need, causing Plaintiff great bodily harm.

41. The conduct of MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to MARK ARANDA,

DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers.

42. As a result of their misconduct, Defendant MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, are liable for Plaintiff's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

**THIRD CLAIM FOR RELIEF**
**Unreasonable Search and Seizure - False Arrest (42 U.S.C. § 1983)**
**(Against Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers)**

43. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 42 of the Complaint with the same force and effect, as if fully set forth here.

44. To Plaintiff's continuing harm, after being accosted and beaten by Defendants, Plaintiff was summarily arrested and taken into custody, transported to and booked into The City of Fontana jail facility.

45. Plaintiff was ultimately told that he had been arrested for violating California Penal Code Section 148(a)(1) and is currently undergoing prosecution for this section.

46. At no time did Plaintiff resist, delay, or obstruct Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers in the performance of their duties. In fact, the entire duration of the interaction between Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers and Plaintiff prior to Plaintiff's beating and arrest lasted only a few seconds.

47. The false arrest and incarceration of Plaintiff deprived him of his right to be

secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and as applied to state actors by the Fourteenth Amendment.

48. The conduct of MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers.

49. As a result of their misconduct, Defendant MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, are liable for Plaintiff's injuries, either because they were integral participants in the false arrest of Plaintiff or because they failed to intervene to prevent these violations.

50. As a result of the foregoing, Plaintiff suffered great physical pain and emotional distress.

**FOURTH CLAIM FOR RELIEF**
**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**
**(Against Defendants City and DOES 9-10)**

51. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 50 of his Complaint with the same force and effect, as if fully set forth here.

52. Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers acted under color of law.

53. The acts of Defendant MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, including the

assault and battery of Plaintiff and the denial of prompt and necessary medical care, deprived Plaintiff of his rights under the United States Constitution.

54. The training policies of Defendant City's police department were not adequate to train its police officers with regard to wearing identifying uniforms or insignia, verbally identifying themselves, deploying assault rifles, conducting law enforcement operations outside of their normal jurisdiction, using force against unarmed civilians, and rendering aid. As a result, City police officers are not able to handle the usual and recurring situations with which they must deal, including making contact with unarmed individuals and their children. These inadequate training policies existed prior to the date of this incident and continue to this day.

55. The unjustified excessive use of force, detention and arrest, and denial of medical care against Plaintiff by MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers was a result of the negligent training by Defendant CITY who failed to train Fontana Police Department ("FPD") officers, such as MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, as to proper police tactics, proper use of force, and proper detentions and arrests, including timely providing and summoning medical care. Defendant CITY was responsible for the training of FPD officers to ensure the actions, procedures, and practices of MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers complied with Peace Officer Standards and Training ("POST") training standards regarding proper police tactics, and proper use of force.

56. Defendant CITY negligently failed to train CITY police officers, such as MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON

VANTUINEN, and DOE Officers, to comply with POST training standards regarding proper police tactics and proper use of force. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of Defendant CITY were not adequate to train its police officers to handle the usual and recurring situations with residents that MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers have contact with.

57. The training polices of Defendant CITY were deficient in the following:

a. Defendant CITY failed to adequately train Fontana Police Department officers, such as MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, in de-escalating interactions with the public. Instead of de-escalation, MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers escalated their interaction with Plaintiff.

b. Defendant CITY failed to properly train CITY police officers, such as MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, in proper police tactics, including effective communication, to prevent the use of negligent tactics, which is what MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers did in this case. Because of this lack of proper training by Defendant CITY, MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON

MCCAULLEY, JON VANTUINEN, and DOE Officers did not use proper police tactics in handling their contact and interaction with Plaintiff, and MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers used defective police tactics. These training failures by Defendant CITY resulted in injury to Plaintiff.

c. Defendant CITY failed to properly train police officers, such as MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, on the importance of effective communication between officers prior to executing a search warrant.

d. Because of the lack of proper training by CITY, MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers did not use effective communication prior to and during the detention and arrest and use of force against Plaintiff. This ineffective communication by MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers caused injury to Plaintiff.

58. The failure of Defendant CITY to provide proper training to its police officers resulted in the deprivation of Plaintiff's rights by MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers. Defendant CITY's failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injuries to plaintiff.

59. The following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the

underlying acts that caused Plaintiff's injuries, which indicates that Defendant CITY failed to adequately train its officers, particularly with respect to detentions and arrests and the use of force:

a. In *M.S., et al. v. City of Fontana, et al.*, case number 5:16-cv-02498-JGB-DTB, Plaintiffs alleged the involved Fontana Police department officers used excessive force when they shot and killed Decedent, who was unarmed and was not an immediate threat to the officers or any other person.

b. In *Marlo Rayo, et al. v. City of Fontana, et al.*, case number 5:19-cv-01264-JGB-SHK, Plaintiffs alleged the involved Fontana Police Department officers wrongfully detained and arrested a homeowner and his family members and used excessive force against them, including slamming, beating, and deploying batons and Tasers against Plaintiffs, even though Plaintiffs did not resist the involved officers.

c. In *Ralph Robert Lopez v. City of Fontana, et al.*, case number 5:19-cv-01727-JGB-SP, Plaintiff alleged the involved Fontana Police Department officers struck him with an unmarked vehicle while he was attempting to back out of a parking spot. Plaintiff further alleged that City of Fontana officers in civilian clothing struck him in the head several times and shot him, even though Plaintiff never resisted the officers and kept his hands in the air at all times.

d. In *Devon King v. City of Fontana, et al.*, case number 5:20-cv-1071, Plaintiff alleged the involved Fontana Police Department officers used excessive force when they shot Plaintiff, who was unarmed and posed no immediate threat to officers.

e. In *Isabel Valdez, et al. v. City of Fontana, et al.*, case number EDCV 24-02631-KK-SPx, a Judge in the Central District of California approved a Minors Compromise and Settlement of $3,246,500, where Plaintiffs alleged the involved officers shot and killed Jamie Valdez when he was not an immediate threat to the officers.

60. The training policies of the CITY were not adequate to train its police officers to handle the usual and recurring situations they must deal with.

61. The Defendant City's police department was deliberately indifferent to the known or obvious consequences of its failure to adequately train its police officers. This inadequate training includes failing to teach officers to properly identify themselves when engaging with frightened, unarmed community members and the proper deployment of assault rifles, prior to using force.

62. Defendant City was aware that failure to implement some sort of training with regard to their officers' extra-jurisdictional deployment to a neighboring city, while wearing plainclothes and carrying assault rifles when encountering unarmed civilians, including children, would result in continuing to have numerous unreasonable and dangerous encounters with unarmed individuals annually.

63. By failing to provide adequate training to Defendant City's police officers, Defendants acted with an intentional, reckless, and callous disregard for the life of PLAINTIFF and Plaintiffs' constitutional rights. Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

64. The failure of Defendant City to provide adequate training caused the

deprivation of Plaintiff's rights by Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's rights as to be a moving force that caused the ultimate injuries.

65. By reason of the aforementioned acts and omissions, Plaintiff suffered significant emotional distress and pain and suffering.

66. Accordingly, Defendants City and DOES 9-10 are each liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

**FIFTH CLAIM FOR RELIEF**
**Municipal Liability – Ratification (42 U.S.C. § 1983)**
**(Against Defendants City and DOES 9-10)**

67. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 66 of his Complaint with the same force and effect, as if fully set forth here.

68. Defendants MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers acted under color of law.

69. The acts of Defendant MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, as set forth above, including assaulting and battering Plaintiff, then denying Plaintiff prompt and necessary medical care, deprived Plaintiff of his particular rights under the United States Constitution.

70. Any reasonable policymaker would recognize that sending plain clothes officers with AR-15 style weapons into residential neighborhoods outside of Fontana jurisdiction without clear protocols for identification and de-escalation creates a highly predictable risk of confrontation, confusion, and excessive force producing such an obvious risk of constitutional

Case 5:26-cv-01632-JGB-DTB Document 26 Filed 01/26/26 Page 18 of 20 Page ID #:1289

violations that FPD policymakers can reasonably be said to have been deliberately indifferent to the need for training on these issues.

71. Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, ratified (or will ratify) MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers acts, which include use of excessive force against Plaintiff as well as the unreasonable detention and arrest of Plaintiff and denial of medical care.

72. Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendant MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers were "within policy."

73. On information and belief, Defendant MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Plaintiff's beating.

74. By reason of the aforementioned acts and omissions, Plaintiff has suffered extreme emotional distress and pain and suffering.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Danny Molina Lira requests entry of judgment in his favor and against Defendants City of Fontana MARK ARANDA, DOMINIQUE ANESETTI, AARON ALCALA, BRANDON MCCAULLEY, JON VANTUINEN, and DOE Officers, inclusive, as follows:

1. For compensatory damages, under federal and state law, in an amount to be proven at trial;

2. For general damages, including damages for emotional distress and pain and suffering, in an amount to be proven at trial;

3. For punitive damages;

4. For interest;

5. For reasonable attorneys' fees;

6. For costs of suit; and

7. For such further other relief as the Court may deem just, proper, and appropriate.

Dated: September 25, 2026. LAW OFFICES OF DALE K. GALIPO

By:________________________________
Dale K. Galipo
Attorneys for Plaintiff Danny Molina Lira

**DEMAND FOR JURY TRIAL**

Plaintiff Danny Molina Lira hereby demands that his claims presented in this Complaint be heard by a jury of his peers.

Dated: September 25, 2026. LAW OFFICES OF DALE K. GALIPO

By:______________________________
Dale K. Galipo
Attorneys for Plaintiff Danny Molina Lira

# EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-1632 JGB (DTBx)** | Date | September 11, 2026 |
| Title | ***Molina Lira v. City of Fontana, et al.*** | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| MAYNOR GALVEZ | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: Order (1) GRANTING Defendant City of Fontana's Motion to Dismiss; and (2) VACATING the September 14, 2026 Hearing (IN CHAMBERS)**

Before the Court is defendant City of Fontana's motion to dismiss. ("Motion," Dkt. No. 18.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the September 14, 2026 hearing.

## I. BACKGROUND

On March 30, 2026, plaintiff Danny Molina Lira ("Lira" or "Plaintiff") filed a complaint against defendants the City of Fontana ("Defendant" or "City"), and Does 1-20.[1] ("Complaint," Dkt. No. 1.) On June 25, 2026, the parties filed a stipulation to allow Plaintiff to file a first amended complaint. (Dkt. No. 15.) The Court agreed and granted Plaintiff leave to file a first amended complaint on July 8, 2026. (Dkt. No. 16.) Plaintiff filed his first amended complaint on July 24, 2026. ("FAC," Dkt. No. 17.)

[1] Does 1-10 are police officers of the City of Fontana who worked for the City of Fontana Police Department during the relevant time of the Complaint. (Compl. ¶¶ 8, 10-11.) Does 11-20 are supervisorial, managerial, and policymaking employees of the City of Fontana and its police department who worked for the City during the relevant time of the Complaint. (Compl. ¶ 9.)

Plaintiff alleges eight counts: (1) Unreasonable Search and Seizure, Excessive Force in violation of 42 U.S.C. § 1983; (2) Due Process, Denial of Medical Care in violation of 42 U.S.C. § 1983; (3) Unlawful/False Arrest in violation of 42 U.S.C. § 1983; (4) Inadequate Training (Monell) in violation of 42 U.S.C. § 1983; (5) Ratification (Monell) in violation of 42 U.S.C. § 1983; (6) Battery; (7) Negligence; and (8) Violation of Cal. Civil Code § 52.1. (Id. ¶¶ 21-86.)

On August 14, 2026, Defendant filed the Motion. (Motion.) On August 24, 2026, Plaintiff filed an opposition to the Motion. ("Opposition," Dkt. No. 20.) On August 31, 2026, Defendant filed a Reply to the Opposition. ("Reply," Dkt. No. 21.)

## II. FACTUAL ALLEGATIONS

Mr. Lira alleges the following facts, which are assumed to be true for the purposes of this Motion. See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002). On April 1, 2025, at approximately 1:30 p.m., Defendants Does 1-10, Fontana police officers, accosted Mr. Lira and his minor daughter in his driveway outside of his home located at 1750 W. Townsend Street, Rialto, California, 92377. (FAC ¶ 18.) The officers drove unmarked vehicles and wore plain clothes. (Id.) The officers proceeded to chase Mr. Lira's daughter with "an AR15-like weapon" and violently beat Mr. Lira as he questioned their actions. (Id.) The beating resulted in severe injuries to Mr. Lira. (Id.) Mr. Lira posed no immediate threat of death or bodily injury to the officers or anyone else during all instances of force by the officers. (Id. at ¶ 19.) The officers then falsely arrested Mr. Lira for an alleged violation of Cal. Penal Code § 148(a)(1). (Id. at ¶ 18.) The officers also did not summon medical care for Mr. Lira or permit medical personnel to treat him. (Id. at ¶ 20.) The delay in medical care resulted in extreme physical and emotional pain and suffering for Mr. Lira. (Id.)

## III. LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")[2], a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo

[2] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Case 5:25-cv-01632-JGB-DTB Document 22 Filed 09/10/25 Page 3 of 7 Page ID #:205

v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV. DISCUSSION

Defendant moves the Court to dismiss Counts Four through Eight. (Mot. at 2.) The Court addresses the claims below.

### A. Count Four – Inadequate Training (Monell)

Defendant argues that Plaintiff's allegations are insufficient to state a claim. (Mot. at 9.) Plaintiff responds that the FAC alleges sufficient facts to support a claim for inadequate training

under 42 U.S.C. § 1983. (See Opp. at 7-12.)

Monell liability exists under 42 U.S.C. § 1983 for a local government's "inadequate training of its employees." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). Municipal governments are only liable for "'their *own* illegal acts . . . [and] are not vicariously liable under § 1983 for their employees' actions." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989) (citing Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)).

Monell liability for a failure to train only attaches "where the failure to train amounts to deliberate indifference to the rights of persons with whom" the employees come into contact." Id. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 563 U.S. at 61 (citing Board of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 419 (1997)). As a result, a local government policymaker must be "on actual or constructive notice that a particular omission in their training program causes the [local government] employees to violate citizens' constitutional rights. Id. (citing Bryan Cnty., at 407). Stated differently, Monell liability attaches when a local government is on "notice" that its training program "will cause constitutional violations" and yet has a "policy of inaction," because such a policy "is the functional equivalent of a decision by the [local government] itself to violate the Constitution." Id. (citing Canton, 489 U.S. at 395). Appling a "less stringent standard . . . 'would result in de facto respondeat superior liability'" on local governments. Id. (citing Canton, 489 U.S. at 392). To prove deliberate indifference, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary." Id. (citing Bryan Cnty., at 407). A single act may be sufficient to demonstrate deliberate indifference where "'fault and causation' were clearly traceable to a municipality's legislative body or some other authorized decisionmaker." Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1153–54 (9th Cir. 2021) (citing Bryan Cnty., 520 U.S. at 406.)

The Ninth Circuit instructs that to state a Monell claim for failure to train, "a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1153–54 (9th Cir. 2021).

Plaintiff's allegations as pled in his FAC are insufficient. Mr. Lira identifies the inadequate training as a failure to teach the involved officers to "properly identify themselves when engaging with frightened, unarmed community members" and a failure to teach the proper deployment of assault rifles prior to the use of force. (FAC ¶ 47.) Although Plaintiff identifies the training he believes was inadequate, he does not identify *how* the training and hiring practices were inadequate. See Rodrigues v. Cnty. of Orange, No. SACV20298JVSDFMX, 2020 WL 3396619, at *6 (C.D. Cal. June 18, 2020). Plaintiff then alleges that the Defendant "was deliberately indifferent to the known or obvious consequences of its failure to adequately train its police officers." (FAC at ¶ 47.) Plaintiff again fails to provide any explanation as to what exactly

made the Defendant "deliberately indifferent" to the consequences of its alleged failure to train. The Court finds that Plaintiff's argument more closely resembles "labels and conclusions" or a "formulaic recitation of a cause of action's elements. Twombly, 550 U.S. at 555. Thus, this argument fails to "nudge[]" Plaintiff's claim "across the line from conceivable to plausible." Id. at 570. Plaintiff fails to state a Monell claim for failure to train. Accordingly, the Court **GRANTS** the Motion and **DISMISSES** Count Four **WITH LEAVE TO AMEND**.

**B. Count Five – Ratification (Monell)**

Defendant argues that Plaintiff's allegations are insufficient to state a claim based on ratification because his claim "rests solely on vague and conclusory allegations." (Mot. at 13.) In its reply, Defendant further argues that Plaintiff's failure to oppose "operates as a concession that Defendant's arguments are meritorious." (Reply at 9.)

A municipality can "be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." Christie v. Iopa, 176 F.3d 1231, 1238 (9th Cir. 1999). To show ratification, Plaintiff must prove that the "authorized policymakers approve[d] a subordinate's decision and the basis for it." Id. at 1239 (citations omitted). Using a ratification theory, mere failure to discipline employees, without more, is insufficient to give rise to municipal liability. See Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1253 (9th Cir. 2010), rev'd on other grounds, Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016). However, in the Ninth Circuit, "[o]rdinarily, ratification is a question for the jury." Christie, 176 F.3d at 1238–39. Ratification generally requires some level of supervisory knowledge and approval. See Sheehan v. City and Cnty. of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014), rev'd on other grounds, City and Cnty. of San Francisco v. Sheehan, 575 U.S. 600 (2015); Christie, 176 F.3d at 1239.

Plaintiff's allegations are again insufficient. Mr. Lira states that "[u]pon information and belief, a final policymaker has determined (or will determine) that the acts of Defendant DOE Officers were 'within policy.'" (FAC ¶56.) Plaintiff's FAC "lacks factual allegations with respect to what the alleged unnamed 'policymaker' knew about the situation or that he or she specifically approved of the decision and the basis for it." See Herd v. Cnty. of San Bernardino, 311 F. Supp. 3d 1157, 1169 (C.D. Cal. 2018). Should Plaintiff amend his FAC, he must plead facts concerning the final policymaker's knowledge of the incident.

Additionally, Plaintiff alleges that "[o]n information and belief, Defendant DOE Officers were not disciplined, reprimanded, restrained, suspended, or otherwise penalized in connection with Plaintiff's beating." (Id. at ¶ 57.) An allegation that a policymaker failed to discipline an employee without more does not establish municipal liability under a ratification theory. See Clouthier, 591 F.3d 1232, 1253 (9th Cir. 2010) (reversed on other grounds in Castro, 833 F.3d 1060 (9th Cir. 2016)) (holding that the mere allegation that employees were not disciplined for violations of plaintiff's constitutional rights was insufficient to establish ratification). Accordingly, the Court **GRANTS** the Motion and **DISMISSES** Plaintiff's fifth claim **WITH LEAVE TO AMEND**.

Case 5:26-cv-01632-JGB-DTB Document 21 Filed 09/09/26 Page 70 of 82 Page ID #:1529

### C. Count Six-Eight – Battery, Negligence, and Violation of Cal. Civ. Code § 52.1

Finally, Defendant argues that Plaintiff's sixth, seventh, and eighth claims fail as a matter of law because Cal. Gov't. Code § 945.3 prohibits Plaintiff from bringing a civil action for money or damages based on his conduct related to the charged offense while his criminal charges are pending.[3] (Mot. at 15.) Plaintiff argues that his civil claims do not arise from the same conduct as the criminal charge but from the Doe officers' conduct. (Opp'n. at 13.)

In California, persons charged with a pending criminal offense are precluded from bringing civil actions against a peace officer or public entity based upon conduct relating to the offense for which they are charged. Cal. Gov't Code § 945.3. The statute tolls any applicable statute of limitations for "filing and prosecuting the actions" during the period the charges are pending before a superior court. Id. The Ninth Circuit has interpreted the "based upon" language to mean "because of," of which the ordinary meaning is "by reason of" or "on account of." Lockett v. Cnty. of Los Angeles, 977 F.3d 737, 741 (9th Cir. 2020) (citations omitted). In other words, "based on" refers to the "but-for causal relationship and[] a necessary logical condition." Id. (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 63 (2007)). Accordingly, Cal. Gov't Code § 945.3 precludes persons charged with a pending offense from bringing civil actions when the "but for" cause of the claim is the conduct relating to the offense for which the person is charged. In Lockett v. Cnty. of Los Angeles, 977 F.3d 737, 741 (9th Cir. 2020), the Court found that the peace officer's conduct at issue constituted an element of the Monell claim and held that it was thus clear that the officers' conduct was the "but for" cause of the Plaintiff's Monell claim. Thus, the claim was "'based upon conduct of the peace officer[s]' within the meaning of [Cal Gov't Code] §945.3." Id. at 741-42.

Here, Mr. Lira alleges that the officers violently beat him unprovoked, left him with severe injuries, and thereafter falsely arrested him for an alleged violation of Cal. Penal Code § 148(a)(1). (FAC ¶ 18.) His claims thus arise from the same nucleus of facts alleging excessive use of force by the officers employed by Defendant. Accordingly, the alleged conduct lies at the heart of Mr. Lira's claims, and his claims are "based upon" the conduct of the officers within the meaning of Cal. Gov't Code § 945.3. The Court thus **GRANTS** the Motion and **DISMISSES** Plaintiff's sixth, seventh, and eighth claims. Because Cal. Gov't Code § 945.3 tolls the statute of limitations for the claims until the date of judgment and sentence, Mr. Lira may refile his claims after that point in time. Guy v. Lorenzen, 547 F. Supp. 3d 927, 950-51 (S.D. Cal. 2021).

//

[3] Defendant asks that the Court take judicial notice of the fact that "Plaintiff is currently being criminally prosecuted under Cal. Penal Code § 148(a) in San Bernardino Superior Court, Case No. MWV25017980, based on his conduct during the incident at issue.") (Dkt. No. 19.) On a motion to dismiss, the Court generally may not consider materials beyond the pleadings. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989). Therefore, the Court **DENIES** Defendant's request.

### D. Leave to Amend

Generally, leave to amend under Rule 15 should be granted with "extreme liberality." Eminence Cap., L.L.C., 316 F.3d at 1051. However, the Court may deny leave to amend where "further amendment would be futile." Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987). Accordingly, the Court **GRANTS** leave to amend as to Plaintiff's fourth and fifth claims.

## V. CONCLUSION

For the above reasons, the Court **GRANTS** the Motion to Dismiss. Plaintiff is directed to file a Second Amended Complaint within **fourteen days** of this order. The Court **VACATES** the September 14, 2026 hearing.

**IT IS SO ORDERED.**

# EXHIBIT E

**Tanner Petchul**

| | |
|---|---|
| **From:** | Tanner Petchul |
| **Sent:** | Thursday, October 1, 2026 3:57 PM |
| **To:** | Ed Brown; michael.clark; 'dalekgalipo@yahoo.com' |
| **Cc:** | 'Laura Vazquez'; 'nereyda.dominguez'; Jesse Cox; Debra Miranda; Garros Chan |
| **Subject:** | Lira v. City of Fontana -- Meet and Confer Correspondence re Plaintiff's Second Amended Complaint |
| **Attachments:** | 003 L.R. 7-3 re Motion to Dismiss Plaintiff's Second Amended Complaint.pdf |

Good afternoon, counsel:

I'm attaching here a meet and confer letter regarding perceived deficiencies in Plaintiff's Second Amended Complaint in our Lira case. Please let me know when you may have time to discuss.

Thank you,

TANNER PETCHUL
Off: (714) 937-1010 Fax: (714) 937-1003

LYNBERG & WATKINS

1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
www.lynberg.com www.linkedin.com

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.

LYNBERG & WATKINS

*October 1, 2026*

***VIA EMAIL ONLY***
edbrownlaw@gmail.com
dalekgalipo@yahoo.com

Edwin B. Brown, Esq.
Brown Clark Le & Cevallos, LLP
22342 Avenida Empresa, Suite 125
Rancho Santa Margarita, CA 92688

Dale K. Galipo, Esq.
The Law Offices of Dale K. Galipo
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367

Re: ***Lira v. City of Fontana, et al.***
Case No.: 5:26-cv-01632-JGB
Date of Loss: April 1, 2025
Our File No.: 1307-0089

Dear Counsel:

As you are aware, our office represents Defendant City of Fontana ("City" or "Defendant") in the above captioned matter. We have completed a thorough review of Plaintiff Danny Lira's ("Plaintiff") Second Amended Complaint ("SAC") for Damages. We write to communicate several remaining deficiencies in the SAC that subject it to a pre-answer challenge. Please allow this correspondence to serve as Defendant's meet and confer attempt, pursuant to Local Rule 7-3, to informally resolve the issues discussed herein, prior to Defendants filing a Rule 12 motion.

## I. Motion to Dismiss for Failure to State a Claim for Relief (*Fed. R. Civ. Proc. 12(b)(6)*)

### A. Plaintiff's Fourth and Fifth Causes of Action for "Monell" Liability Still Fail as a Matter of Law

Defendant reads Plaintiff's Fourth and Fifth Causes of Action as pled against the City as attempting to impute "Monell" liability to the City based on alleged "failure to train" and "ratification." (See, SAC, ¶¶ 43-56). Based on the current allegations, Defendant contends each of these theories remain insufficiently pled such that this cause of action fails as a matter of law.

1. Failure to Train

Plaintiff's "failure to train" theory of Monell liability still suffers from several substantive defects that warrant dismissal. As observed by the Ninth Circuit, "*Monell* liability is 'at its most tenuous where a claim turns on a failure to train.'" See, Vanegas v. City of Pasadena, 46 F.4th 1159, 1167 (9th Cir. 2022) (internal quotation omitted). Here, Plaintiff's claim is tenuous for a number of reasons, the first of which being that it is supported by nothing more than vague and conclusory allegations that never once inch close to factual allegations demonstrating how or why City's or the Fontana Police Department's ("FPD") training was inadequate. See, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A failure to factually identify the problematic training; to explain why it is inadequate; and to factually connect the improper or inadequate training to Plaintiff's claimed constitutional injury dooms this theory. See, Herd v. County of San Bernardino, 311 F.Supp.3d 1157, 1168 (dismissing "Failure to Train" claim where "Plaintiffs provide no facts regarding the training the officers received and do not explain why the training was inadequate."); see also, Young v. City of Visalia, 687 F.Supp.2d 1141, 1149 (E.D. Cal. 2009) (noting that allegations of inadequate training and hiring practices were "threadbare" because the complaint did "not identify what the training and hiring practices were, how the training and hiring practices were deficient, or how the training and hiring practices caused Plaintiffs' harm"); Rodrigues v. County of Orange, 2020 WL 3396619, at *6 (C.D. Cal. 2020) (dismissing "Failure to Train Claim" where plaintiff "fails to include specific facts regarding (1) what training the officers received; (2) why the training was inadequate; (3) or how the County's allegedly inadequate training caused [Plaintiff's] injuries."); Mong Kim Tran v. City of Garden Grove, 2012 WL 405088, at *4 (C.D. Cal. 2012) (finding conclusory allegation of inadequate police training insufficient to state Monell claim where plaintiff did not plead specific allegations regarding what the trainings were, how they were deficient, or how they caused plaintiff harm).

To be sure, making vague allegations about training and alleging that officers did not adhere to it, or that officers did not properly supervise other officers to ensure their adherence to training, is a far cry from describing *inadequate* training in enough detail to indicate with certainty that it actually exists, its substance, that it was the moving force behind a constitutional violation, or that the need for more or different training was so obvious as to amount to "deliberate indifference." See, e.g., M.D. v. County of San Bernardino, 2023 WL 2342338, at *8 (C.D. Cal. 2023); see also, City of Canton v. Harris, 489 U.S. 378, 388 (1989); Herd, supra, 311 F.Supp.3d at 1169.

Plaintiff added several new sections to his SAC. First, Plaintiff plainly states that "[t]he unjustified excessive use of force, detention and arrest, and denial of medical care against Plaintiff" by Defendant Officers "was a result of the negligent training by Defendant City who failed to train" Defendant Officers "as to proper police tactics, proper use of force, and proper detentions and arrests, including timely providing and summoning medical care." (SAC, ¶ 55). Plaintiff further alleges that the City failed to train Defendant Officers to comply with Peace Officer Standards and Training ("POST"). (SAC, ¶ 55). Plaintiff then alleges that the City failed to adequately train Fontana Police Department ("FPD") officers in (1) de-escalating interactions with the public (2) proper police tactics, including effective communication, to prevent the use of negligent tactics, and (3) the importance of effective communication between officers prior to executing a search warrant. (SAC, ¶ 57). He then alleges, in conclusory fashion, that FPD officers escalated their interaction with Plaintiff, used defective police tactics against Plaintiff, and did not use effective communication prior to the detention and arrest of Plaintiff. Although Plaintiff identifies several general areas in which he believes FPD officers should have received different training, he never identifies what was actually deficient about the training FPD provided. See, Herd, supra, 311 F.Supp.3d at 1168. In other words, "[a]lthough Plaintiff identifies the training he believes was inadequate, he does not identify *how* the training. . . [was] inadequate." (See, September 11, 2026 Order, Dkt. 22, p. 4) (citing Benavidez v. Cnty of San Diego, 993 F.3d 1134, 1153-52 (9th Cir. 2021)).

Plaintiff's "failure to train" theory further fails as a matter of law because Plaintiff fails to sufficiently allege that the City or the FPD was "deliberately indifferent" to the rights of persons that officers were likely to encounter. To properly plead a "failure to train" claim, Plaintiff must establish that "the failure to train amounts to deliberate indifference to the rights of persons impacted by the inaction." See, M.D., supra, 2023 WL 2342338, *8 (citing City of Canton, supra, 489 U.S. at 388) (internal citations omitted). Specifically, Plaintiff must plead enough facts to establish that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [City] can reasonably be said to have been deliberately indifferent to the need." See, M.D., supra, 2023 WL 2342338, *8 (citing City of Canton, supra, 489 U.S. at 390) (internal citations omitted). Plaintiff has not done this. Instead, he still makes conclusory allegations. (See, SAC, ¶ 61). In fact, Plaintiff's paragraph regarding "deliberate indifference" is exactly the same as pled in his First Amended Complaint and references inadequate training only as to "teach[ing] officers to properly identify themselves when engaging with frightened, unarmed community members and the proper deployment of assault rifles, prior to using force." (See, SAC, ¶ 61). This is exactly the language that the Court stated "fail[ed] to provide any explanation as to what exactly made the [City] 'deliberately indifferent' to the consequences of its alleged failure to train." (See, September 11, 2026 Order, Dkt. 22, p. 4-5).

Even if Plaintiff could navigate around this substantive pitfall, there is another reason supporting dismissal. To properly establish municipal liability under Section 1983 for "failure to train," a plaintiff must plead sufficient facts demonstrating that "deficient training" caused other, similar incidents. See, Black v. City of Blythe, 562 F.Supp.3d 820, 835 (C.D. Cal. 2022) (granting defendants' motion to dismiss plaintiff's "failure to train" claim, reasoning that plaintiff's "conclusory statement" was "insufficient to show more than a single incident of unconstitutional activity…"); see also, Brown v. Cnty. Of San Bernardino, 2021 WL 99722, at *6 (C.D. Cal. 2021) (holding plaintiff's claim inadequate where "plaintiff d[id] not sufficiently allege additional, similar incidents, other than the incident at issue here."); Flores v. Cnty. of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (plaintiff must show a "pattern of similar constitutional violations by untrained employees."); City of Canton, supra, 489 U.S. at 397-398 ("inadequate training" claims "require a showing of a pattern of violations from which a kind of 'tacit authorization' by [municipal] policymakers can be inferred…"); Case v. Kitsap County Sheriff's Dep't, 249 F.3d 921, 931-932 (9th Cir. 2001) ("Although inadequacy of police training may serve as the basis for municipal liability in certain circumstances, the evidence presented by [plaintiff] does not support such a claim, nor can liability be predicated on the isolated sporadic events in this case.").

As best as the City can tell, it appears that Plaintiff attempts to satisfy the "similar incidents" pleading requirement by citing to five other cases he alleges indicate that the City failed to adequately train its officers. (See, SAC, ¶ 59). However, the cited cases do not plead sufficient *facts* demonstrating that "deficient training" caused other, *similar* incidents. See, Black, supra, 562 F.Supp.3d at 835. More specifically, Plaintiff cites five cases, each with a bare, one-sentence lawsuit summary providing no detail about what training deficiency allegedly caused the incident, whether the City was found liable, or how the City responded. Nor are the cases sufficiently similar to the training deficiencies Plaintiff identifies here—de-escalation, effective communication, and communication between officers before executing a search warrant—to put the City on notice of those specific omissions.

In Section 1983 litigation pursued in federal court, actual facts must be pled. Reciting legal conclusions and alleging "facts that are merely consistent with a defendant's liability" is not enough. See, Wolcott v. County of Orange, 2023 WL 3984215, *2 (C.D. Cal. 2023) ("The Wolcotts contend their complaint is replete with factual allegations. [Citation]. The Court disagrees. Many of the 'factual allegations' to which the Wolcotts point are legal conclusions and unsubstantiated with facts"; motion to dismiss granted); see also, Iqbal, supra, 556 U.S. at 678; Twombly, supra, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). As currently pled, Plaintiff's Section 1983 claim against the City still fails to include specific factual allegations to sufficiently state a claim for relief. Accordingly, his Fourth Cause of Action fails as a matter of law and is subject to dismissal. See, Fed. R. Civ. Proc. 12(b)(6).

2. Ratification

Just like Plaintiff's "failure to train" theory, this one also remains deficient as a matter of law. For starters, Plaintiff's "ratification" theory is still insufficient because it rests solely on vague and conclusory allegations. See, Iqbal, supra, 556 U.S. 678; see also, Twombly, supra, 550 U.S. at 555. The current allegations in the SAC paragraphs regarding "ratification" are nothing more than bald, threadbare recitals of the elements of a claim, which our courts uniformly reject as insufficient. (See, SAC, ¶¶ 67-74). See, Twombly, supra, 550 U.S. at 555 ("[T]threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."); see also, Brown, supra, 2021 WL 99722, at *4 (granting defendants' motion to dismiss because plaintiff failed to allege "specific, plausible facts supporting her claim" and instead only "recite[d] the elements of the cause of action") (internal citations omitted). Indeed, similar allegations were found inadequate in the Herd case, cited repeatedly above. In Herd, the plaintiff advanced a "ratification" theory that read similar to Plaintiff's claim here. The court found the claim "lacks factual allegations with respect to what the alleged unnamed 'policymaker' knew about the situation or that he or she specifically approved of the decision and the basis for it." See, Herd, supra, 311 F.Supp.3d at 1169. The same is true here. Put another way, Plaintiff's claim is bereft of factual allegations regarding when, how, or in what manner the City or the FPD ratified or approved of DOE officers' conduct. See, Icon Desert Logistics v. City of Blythe Police Dept., 2020 WL 7229853, at *5 (C.D. Cal. 2020).

Second, Plaintiff has not alleged facts identifying a "final policymaker" that knowingly "ratified" violation of Plaintiff's rights under the Constitution and the "basis for it." See, Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). For a "ratification" theory to even attach, "the circumstances of the ratification must also demonstrate that the supervisor had previously set in motion acts of others which caused the others to inflict a constitutional injury." Peschel v. City of Missoula, 686 F.Supp.2d 1092, 1102 (D. Mont. 2009). Ratification thus generally requires more than acquiescence in another's unconstitutional conduct. See, Sheehan v. City & Cnty. of S.F., 741 F.3d 1211, 1231 (9th Cir. 2014).

As with Plaintiffs initial Complaint and First Amended Complaint, Plaintiff alleges in his SAC that "upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendant DOE Officers were 'within policy'" and that they were "not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Plaintiff's beating." (See, SAC, ¶¶ 72-73). However, even assuming Plaintiff had adequately alleged that a final policymaker approved the officers' conduct after the incident—which he has not—that still would not establish municipal liability under a ratification theory. Defendant understands that Plaintiff added in his SAC that, "upon information and belief, [a] final policymaker knew of and specifically approved of (or will specifically approve of) [Defendant Officers] acts, which include use of excessive force against Plaintiff as well as the unreasonable detention and arrest of Plaintiff and denial of medical care." (See, SAC, ¶ 71). But Plaintiff's allegations concern only the

alleged ratification of the incident giving rise to this lawsuit and are devoid of any factual allegations regarding prior acts, prior ratification, or any policymaker's prior approval of similar constitutional violations. Therefore, Plaintiff has failed to allege the type of ratification necessary to impose municipal liability under a "ratification" theory.

Accordingly, Plaintiff's Fifth Cause of Action fails as a matter of law and is subject to dismissal. See, Fed. R. Civ. Proc. 12(b)(6).

**II. Conclusion**

We are available to discuss any and all the issues raised herein. It is our hope that we can resolve these disputes informally by an agreement that Plaintiff will file a Second Amended Complaint that omits the incurable deficiencies identified here and otherwise corrects those capable of correction. If Plaintiff is so agreeable, please advise and we will work with your office on timing of the amended pleading.

In the event we are not able to reach an agreement that Plaintiff will amend his SAC, Defendant will have no choice but to proceed with filing a Motion to Dismiss by their current deadline of October 9, 2026. Should Plaintiff require additional time to consider the points raised here, we are agreeable to entering into a stipulation allowing more time in exchange for a commensurate extension on Defendants' deadline to respond to the Complaint.

Thank you for your anticipated attention to the foregoing. We look forward to hearing from you.

*Very truly yours*,

**TANNER E. PETCHUL**

cc: Jesse K. Cox, Esq.

# EXHIBIT F

**Tanner Petchul**

| | |
|---|---|
| **From:** | Tanner Petchul |
| **Sent:** | Tuesday, October 6, 2026 2:14 PM |
| **To:** | 'Ed Brown'; 'michael.clark'; 'dalekgalipo@yahoo.com' |
| **Cc:** | 'Laura Vazquez'; 'nereyda.dominguez'; Jesse K. Cox; Debra Miranda; Garros Chan |
| **Subject:** | RE: Lira v. City of Fontana -- Meet and Confer Correspondence re Plaintiff's Second Amended Complaint |

Good afternoon, all:

I just wanted to follow up on my email from last week. Please let me know when you may be available to discuss the meet and confer letter.

Thank you,

TANNER PETCHUL
Off: (714) 937-1010 Fax: (714) 937-1003

LYNBERG & WATKINS

1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
www.lynberg.com www.linkedin.com

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.

---

**From:** Tanner Petchul
**Sent:** Thursday, October 1, 2026 3:57 PM
**To:** Ed Brown <edbrownlaw@gmail.com>; michael.clark <michael@bclclaw.org>; 'dalekgalipo@yahoo.com' <dalekgalipo@yahoo.com>
**Cc:** 'Laura Vazquez' <laura@bclclaw.org>; 'nereyda.dominguez' <nedy@bclclaw.org>; Jesse Cox <jcox@lynberg.com>; Debra Miranda <dmiranda@lynberg.com>; Garros Chan <gchan@lynberg.com>
**Subject:** Lira v. City of Fontana -- Meet and Confer Correspondence re Plaintiff's Second Amended Complaint

Good afternoon, counsel:

I'm attaching here a meet and confer letter regarding perceived deficiencies in Plaintiff's Second Amended Complaint in our Lira case. Please let me know when you may have time to discuss.

Thank you,

TANNER PETCHUL
Off: (714) 937-1010 Fax: (714) 937-1003

LYNBERG & WATKINS

1100 W. Town & Country Rd., Suite 1450
Orange, California 92868
www.lynberg.com www.linkedin.com

The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by 'Reply' command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Lynberg & Watkins for any loss or damage arising in any way from its use.